NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2640
_____

JEAN MARIE CUNNINGHAM,
                                    Appellant

v.

NOVO NORDISK
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-12-cv-06654)
District Judge: Honorable Nitza I. Quiñones Alejandro
_____

Submitted Under Third Circuit LAR 34.1(a)
June 2, 2015

Before:  RENDELL, HARDIMAN and VANASKIE, *Circuit Judges*.

(Filed: June 11, 2015)

_____

OPINION[*]
_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Jean Cunningham appeals the District Court's order granting summary judgment to Novo Nordisk on her employment discrimination claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and her retaliation claim under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.* We will affirm, essentially for the reasons stated by the District Court in its thoughtful opinion.

I

Cunningham is a registered nurse and works as a manager in the product safety department at Novo Nordisk, a pharmaceutical and biopharmaceutical company, where she has been employed since March 2008. In October 2010, Cunningham suffered a heart attack and underwent quadruple bypass surgery. She applied for and received a three-month leave of absence under the FMLA from October 2010 until January 2011.

Shortly before she was due back at work, Cunningham's cardiologist wrote to Novo Nordisk's human resources department, explaining that Cunningham required an additional two weeks to fully recover. He also recommended that she gradually increase her time at work by working four hours a day for her first two weeks back, then six hours per day during her third week back. After this gradual increase in her hours, the doctor expected Cunningham to return to full-time work "with total resumption of her usual responsibilities." App. 180. Novo Nordisk accepted this proposed return-to-work schedule without modification. On February 28, 2011, Cunningham returned to full-time

2

work without restriction.

After returning, Cunningham claims she was subjected to discrimination and retaliation, primarily from her then-supervisor, Dr. Alvin Estilo. Specifically, she claims that whenever she needed to attend a doctor's appointment, had chest discomfort, or needed to work from home, Dr. Estilo "seemed a little perturbed" or "acted disgusted." App. 132–33. Cunningham also claims that Dr. Estilo once disregarded her complaint of chest pain and another time advised her that she would have to "pick up more work." App. 136. Cunningham complains of other discriminatory conduct by co-workers. In particular, she claims that another manager said that the product review board group thought that Cunningham did not know what she was doing and "was inappropriate." App. 125. Cunningham also claims she heard a co-worker say that Cunningham gave herself a heart attack to get extra time off.

Cunningham filed a complaint against Novo Nordisk asserting two claims: discrimination under the ADA[1] and retaliation under the FMLA. Novo Nordisk moved for summary judgment and the District Court granted the motion in its entirety. The Court held that Cunningham could not establish a prima facie case of discrimination under the ADA or retaliation under the FMLA because she did not have a disability, was not

---

[1] All references to the ADA in this opinion are to the Act as amended by the ADA Amendments Act of 2008 (ADAAA), which became effective at the beginning of 2009. *See* Pub. L. No. 110-325, 122 Stat. 3553 (codified at 42 U.S.C. § 12101 *et seq.*).

regarded as disabled by her employer, and had not suffered an adverse employment action. *Id.* This timely appeal followed.[2]

## II

Cunningham argues that the District Court improperly granted summary judgment in favor of Novo Nordisk on each of her claims. She contends that the Court erred by determining that she (1) was not disabled or regarded as disabled under the ADA; (2) did not suffer an adverse employment action; (3) did not establish a failure to accommodate claim; (4) did not establish her claim for hostile work environment; and (5) did not establish a retaliation claim under the FMLA.

## A

We analyze ADA disability claims under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A plaintiff must first establish a prima facie case of disability discrimination by showing that she has a "disability" within the meaning of the ADA, is a "qualified individual," and "has suffered an adverse employment action because of that disability." *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006).

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a district court's order granting summary judgment and review the facts in the light most favorable to the nonmoving party. *Nat'l Amusements, Inc. v. Borough of Palmyra*, 716 F.3d 57, 62 (3d Cir. 2013).

Because Cunningham did not present sufficient evidence to show that she is disabled within the meaning of the ADA, was regarded as disabled by Novo Nordisk, or suffered an adverse employment action, she failed to establish a prima facie case of disability employment discrimination. Although Cunningham correctly points out that the ADAAA made it easier to prove a disability, she must still show a substantial limitation. *See* 42 U.S.C. § 12102(1)–(2). She presented no evidence demonstrating that, because of her heart attack and subsequent surgery, she was substantially limited in a major life activity. Indeed, Cunningham admitted that, since returning to work, she has been fully capable of working, performing her job duties, and caring for herself.

Nor did Cunningham show that she was regarded as having a disability by Novo Nordisk. Although her supervisor and some co-workers were aware of her medical condition, Cunningham did not provide any evidence that they regarded her as disabled or substantially limited in her ability to work. To the contrary, Novo Nordisk integrated Cunningham back to full-time status, continued to rate her as "Meets Expectations" on her annual performance review, and gave her a raise and increased bonus that same year.

Even if Cunningham were able to show that she was disabled or regarded as disabled, she could not show that she suffered any adverse employment action. An adverse employment action is one that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004). After taking leave, Cunningham

5

returned to her job, received the same performance rating she had previously received, and was given a raise and increased bonus. She remains an employee at Novo Nordisk and has continued to receive salary increases. Moreover, Cunningham has never received any type of discipline, warning, or decrease in compensation.

Cunningham argues that she suffered an adverse action when she was reassigned to work on clinical trials upon her return, when Novo Nordisk altered her privilege of working from home, and when her supervisor subjected her to harassment when she wanted to visit the doctor. None of these incidents rise to the level of adverse employment actions. When Cunningham returned to work, her supervisor proposed that she initially handle clinical trial cases, which she had worked on previously and were considered less stressful. Cunningham agreed to the proposal. Rather than an adverse action, this was an attempt by Novo Nordisk to accommodate Cunningham and ease her transition to full-time work in line with the request made by her cardiologist. In any event, Cunningham remained at the same grade level, working for the same supervisor and in the same department, and received an increase in both salary and bonus.

Likewise, to accommodate her return from leave, Novo Nordisk allowed Cunningham to work from home at least 23 times. At that time, no other managers worked from home. Cunningham claims that this accommodation or privilege was altered by her supervisor's questions about what she was working on at home and his explanation of what hours and days she was expected to work. But this type of supervision of an

6

employee's work does not constitute an adverse employment action. Nor does the alleged harassment Cunningham claims she suffered when she wanted to visit the doctor. Although she claims that her supervisor treated her with hostility and disdain each time she visited the doctor, she concedes that she was permitted to take off work every time she needed to. Having experienced no "significant change in employment status," *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998), Cunningham failed to show that she suffered an adverse employment action. Accordingly, the District Court properly granted summary judgment on Cunningham's ADA claims.[3]

B

Cunningham's FMLA "interference" claim is based on a purported violation of 29 U.S.C. § 2615(a)(1), which provides that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" any entitlement guaranteed by the FMLA. To prevail on her interference claim, Cunningham must show that she was entitled to

---

[3] Because the District Court correctly found there were no genuine issues of material fact as to the threshold determination of whether Cunningham had a legally cognizable disability, we need not reach her failure-to-accommodate or hostile-work-environment claims. We note, however, that Novo Nordisk made a number of accommodations for Cunningham when she returned to work, such as granting her additional leave, increasing her workload gradually, and allowing her to work from home on numerous occasions. Cunningham does not identify any accommodation she requested that was denied by Novo Nordisk. Moreover, the sporadic and isolated comments that Cunningham complains her colleagues made, while insensitive, do not rise to the level of "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

benefits under the FMLA and that Novo Nordisk denied her right to receive them. Here, there is no dispute that Cunningham requested and was granted FMLA leave from October 13, 2010 through January 11, 2011, which was all of the time she was entitled to under the FMLA. *See* 29 U.S.C. § 2612(a)(1). Novo Nordisk even granted her additional leave, and Cunningham testified that she did not need any more leave beyond what she took. Based on the record before us, we find no evidence that Cunningham gave Novo Nordisk notice that she needed to take any additional FMLA-qualifying leave. We agree with the District Court that Cunningham was granted all of the leave she requested, and there is no evidence that any additional FMLA leave was needed.

Cunningham's claim of retaliation in violation of the FMLA is based on an alleged violation of 29 U.S.C. § 2615(a)(2), which prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by this subchapter." Because FMLA retaliation claims are subject to the *McDonnell Douglas* burden-shifting framework, Cunningham must initially establish a prima facie case of retaliation by demonstrating that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) there is a causal connection between the adverse employment decision and the FMLA leave. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012). Because Cunningham did not present evidence showing that she suffered an adverse

8

employment action, her claim must fail. Accordingly, the District Court properly granted summary judgment on her claim of retaliation under the FMLA.

III

For the reasons stated, we will affirm the order of the District Court.